SCOLESTICA JURADA *vs.* CITY OF CAMBRIDGE.

Middlesex.    January 17, 18, 1898. — May 19, 1898.

Present: FIELD, C. J., ALLEN, KNOWLTON, LATHROP, & BARKER, JJ.

*Eminent Domain — Witness — Evidence — Damages — Discretion of Presiding Justice — Expert.*

If, at the trial of a petition for the assessment of damages for the taking of land by a city, an understanding between court and counsel is arrived at by which all inquiry as to the crops thereon, except as they are an element in the value of the land on the day of the taking, becomes immaterial, then the answer to a previous question that the witness, who was the husband of the petitioner, raised them by consent of the city after the taking, and the exception to that answer, also become immaterial.

Where, at the trial of a petition for the assessment of damages for the taking of land by a city, a person who carries on a large market garden farm in a neighboring town, who has written and lectured upon agricultural subjects, and who examined the crops standing upon the land a few days after the taking, is not offered as a witness to the value of the land taken, it is within the discretion of the presiding justice to exclude his opinion of the value of the crops as they stood upon the soil.

PETITION to the Superior Court for a jury to assess the damages for the taking by the respondent of the petitioner's land in Lincoln and Lexington, under the provisions of St. 1884, c. 256, entitled " An Act to provide a further supply of water for the city of Cambridge." At the trial, before *Mason,* C. J., the jury returned a verdict for the petitioner, and she alleged exceptions, which appear in the opinion.

*E. I. Smith,* for the petitioner.

*G. A. A. Pevey,* for the respondent.

BARKER, J. The petitioner was entitled to have awarded to her as damages the value as of May 29, 1894, of a tract of land containing somewhat more than seven acres, on which was a house and its outbuildings, almost the whole of the land being under cultivation as a market garden. During the course of the trial the counsel and the court came to an understanding that the verdict should be upon the theory that the land was taken in fee, and that the damages were the market value of the land as it was on May 29, 1894, with interest from that date. Before that understanding had been arrived at, the petitioner's husband,

called and examined as a witness in her behalf, had been asked, upon cross-examination, whether he raised crops on the land after the taking, and, having answered that he did, was then asked whether that was done by the consent of the city. To this question the petitioner objected, and upon its allowance excepted. The answer was, " Yes."

We understand that upon the redirect examination of the same witness the discussion arose, and the understanding between court and counsel was arrived at, by which all inquiry as to the crops, except as they were an element in the value of the land on the day of the taking, became immaterial ; and we think that the result is that the answer that the witness raised them by consent of the city after the taking, and the exception to that answer, then became immaterial. The evidence was thereafter addressed to the question of the market value of the land on May 29, 1894, including the buildings and the crops thereon at that date, and the charge to the jury shows that neither any consent of the city that the crops should be raised after the taking, nor any acts of the city in interfering with the crops after that date, were relied on by either party or allowed to be considered by the jury.

The other exception is to the refusal of the presiding justice to allow a witness who was not offered as a witness to the value of the land taken, but who carried on a large market-garden farm in Arlington, and who had written and lectured upon agricultural subjects, and had examined the crops standing upon the land on June 12, 1894, to testify to his opinion of the value of the crops as they stood upon the soil.

We think it was within the discretion of the presiding justice to exclude this opinion. Lands devoted to market gardening are so common in Massachusetts that there is no lack of competent persons who can give an intelligent opinion as to their value. It is not necessary to resort to evidence of the value of the crops as growing crops as one element affecting the value of the land. The bill of exceptions states that duly qualified witnesses, called by both of the parties, gave estimates of the market value of the land, including the buildings and crops standing thereon at the time of the taking. While evidence of the value of an appurtenance may be admitted when its admission is necessary to

enable the jury fairly to ascertain the value of land taken, as in *Whitman* v. *Boston & Maine Railroad*, 7 Allen, 313, 318, a presiding justice may exclude evidence offered by a witness who does not know the value of the land itself, but is competent to testify to the effect upon the value of the land of certain occurrences. *Butchers' Slaughtering & Melting Association* v. *Commonwealth*, 169 Mass. 103, 115. In such cases much must be left to the discretion of the presiding justice.

*Exceptions overruled.*